[971 NE2d 849, 948 NYS2d 568]

Shawn Bukowski, Appellant, v Clarkson University et al.,
Respondents.

Argued May 2, 2012; decided June 5, 2012

**POINTS OF COUNSEL**

*Murphy, Burns, Barber & Murphy, LLP*, Albany (*Peter G. Barber* and *Catherine A. Barber* of counsel), for appellant. I. The assumption of the risk doctrine was improperly applied. (*Arbegast v Board of Educ. of S. New Berlin Cent. School*, 65 NY2d 161; *Morgan v State of New York*, 90 NY2d 471; *Benitez v New York City Bd. of Educ.*, 73 NY2d 650; *Turcotte v Fell*, 68 NY2d 432; *Owen v R.J.S. Safety Equip.*, 79 NY2d 967; *Lamey v Foley*, 188 AD2d 157; *Demelio v Playmakers, Inc.*, 19 Misc 3d 911; *Moschella v Archdiocese of N.Y.*, 48 AD2d 856; *Ballou v Ravena-Coeymans-Selkirk School Dist.*, 72 AD3d 1323; *Zmitrowitz v Roman Catholic Diocese of Syracuse*, 274 AD2d 613.) II. The granting of a directed verdict was improper. (*Kozak v Broadway Joe's*, 296 AD2d 683; *Szczerbiak v Pilat*, 90 NY2d 553; *Sherry v North Colonie Cent. School Dist.*, 39 AD3d 986.)

*Law Offices of Theresa J. Puleo*, Albany (*Norah M. Murphy* of counsel), for respondents. I. The trial court properly directed the verdict as a matter of law, viewing all issues of fact in appellant's favor. (*Hotaling v CSX Transp.*, 5 AD3d 964; *Szczerbiak v Pilat*, 90 NY2d 553; *Calafiore v Kiley*, 303 AD2d 816.) II. The trial court correctly held that appellant had assumed the risk of injury by his voluntary and knowing participation. (*Turcotte v Fell*, 68 NY2d 432; *Trupia v Lake George Cent. School Dist.*, 62 AD3d 67, 14 NY3d 392; *Morgan v State of New York*, 90 NY2d 471; *Green v City of New York*, 263 AD2d 385; *Maddox v City of New York*, 66 NY2d 270; *Hernandez v Castle Hill Little League*,

256 AD2d 241; *Cuesta v Immaculate Conception R.C. Church*, 168 AD2d 411; *Davidoff v Metropolitan Baseball Club*, 61 NY2d 996; *Roberts v Boys & Girls Republic, Inc.*, 51 AD3d 246; *Harris v Cherry Val.-Springfield School Dist.*, 305 AD2d 964.) III. Appellant's arguments regarding law of the case are contrary to the position taken at trial and are based on a misinterpretation of the record. IV. The deposition transcripts are not a part of the trial record and are not relevant to the lower court's decision or this appeal.

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

Almost every day, we are reminded of the injury risks attendant to participation in organized sports. The question presented in this personal injury action is whether a college baseball pitcher assumed the risk of injury associated with his participation in indoor practice. We conclude that plaintiff Bukowski assumed the inherent risk of being hit by a line drive and affirm the order of the Appellate Division.

Plaintiff had played organized baseball since he was five years old and pitched at the varsity level in high school for three years. He was recruited by Clarkson University to play on their Division III baseball team as a pitcher. During the winter of his freshman year, Bukowski began indoor training in February and was informed by his coaches that he would be practicing "live" in a nylon cage, meaning the pitcher would throw from an artificial mound at regulation distance to the batter and catcher. On the day before his accident, Bukowski observed pitchers throwing "live" practice without an L-screen* in the indoor facility. Despite never having practiced "live" indoors and without an L-screen, Bukowski entered the cage on March 2, 2006, threw about six pitches without batter contact, and then threw a fastball which the batter hit directly back at him, striking Bukowski in the jaw and breaking his tooth.

Plaintiff brought suit against Clarkson University and head coach James Kane to recover damages for injuries sustained. After discovery, Supreme Court denied defendants' motion for summary judgment. Plaintiff's theory at trial was that the risk of being hit by a batted ball was enhanced due to the multi-colored pitching backdrop and low lighting at the indoor facility,

---

* An L-screen is a net strung on a thin, metal frame shaped like a block L that protects pitchers from balls that are batted back at them.

which made it harder to see the white ball, and the failure to use an L-screen. At the close of evidence, the trial court granted defendants' motion for directed verdict on the ground that plaintiff assumed the commonly appreciated risk in baseball of being hit by a line drive. The Appellate Division affirmed, and the appeal followed based on the two-Justice dissent in the court (*see* CPLR 5601 [a]). For the reasons that follow, we affirm.

The assumption of risk doctrine applies where a consenting participant in sporting and amusement activities "is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks" (*Morgan v State of New York*, 90 NY2d 471, 484 [1997]). An educational institution organizing a team sporting activity must exercise ordinary reasonable care to protect student athletes voluntarily participating in organized athletics from unassumed, concealed, or enhanced risks (*see Benitez v New York City Bd. of Educ.*, 73 NY2d 650, 658 [1989]). "If the risks of the activity are fully comprehended or perfectly obvious, plaintiff has consented to them and defendant has performed its duty" (*Turcotte v Fell*, 68 NY2d 432, 439 [1986]). Relatedly, risks which are commonly encountered or "inherent" in a sport, such as being struck by a ball or bat in baseball, are "risks [for] which various participants are legally deemed to have accepted personal responsibility" (*Morgan*, 90 NY2d at 484). The primary assumption of risk doctrine also encompasses risks involving less than optimal conditions (*see Sykes v County of Erie*, 94 NY2d 912, 913 [2000] [playing on an irregular surface is a risk inherent in outdoor basketball activities]; *Maddox v City of New York*, 66 NY2d 270, 274-275 [1985] [baseball player assumed the risk of playing on a wet and muddy field]; *see also Martin v State of New York*, 64 AD3d 62, 64 [3d Dept 2009], *lv denied* 13 NY3d 706 [2009]).

Here, plaintiff was an experienced and knowledgeable baseball player who assumed the inherent risk of being hit by a line drive. Plaintiff testified at trial that he was aware of the risk of getting hurt in baseball, had seen other pitchers get hit by batted balls, had experienced balls being batted back at him, and had hit batters with his own pitches. Bukowski also testified that in over 13 years of playing baseball, he played on numerous fields and facilities under a wide variety of conditions, including variations in lighting and pitching backdrops. Plaintiff was also aware of the obvious risk of pitching without the protection of an L-screen, and he had the opportunity to observe the lighting in the facility as well as the color of the pitching

backdrop prior to his accident. Bukowski testified at trial that despite his appreciation of the conditions, he decided "to go along with how the coach set up practice." Defendants fulfilled their duty of making the "conditions as safe as they appear to be" (*Morgan*, 90 NY2d at 484), and there were no concealed risks unknown to Bukowski.

Even if Clarkson's pitching backdrop and indoor lighting were considered less than optimal for baseball, they still did not constitute risks beyond those assumed by plaintiff. In *Siegel v City of New York* (90 NY2d 471, 488-489 [1997] [decided with *Morgan v State of New York, supra*]), we found that the plaintiff did not assume the risk of tripping on a torn tennis net, as the risk of playing with a torn net is not inherent to the sport of tennis. Likewise, in *Owen v R.J.S. Safety Equip.* (79 NY2d 967 [1992]), this Court found that a professional race car driver did not assume the risk of racing with a defective guard rail and faulty track design, which were risks that did not "inhere in the sport" of racing (*id.* at 970). There is a distinction between accidents resulting from defective sporting equipment and those resulting from suboptimal playing conditions. In the present case, the risks of pitching in an indoor facility without a protective screen were inherent to the sport of baseball and readily apparent to plaintiff. There was expert testimony at trial that multicolored pitching backdrops were common in many college baseball practice facilities, since resources had to be shared with other sports teams. Furthermore, fans sitting behind home plate commonly wear white or multicolored shirts; it is only the batter that gets the benefit of a dark background to see the pitched ball, not the pitcher. Therefore, the conditions in the indoor facility did not create "a dangerous condition over and above the usual dangers that are inherent in the sport" (*Morgan*, 90 NY2d at 485 [internal quotation marks and citation omitted]).

Tellingly, plaintiff does not assert that the Clarkson coaching staff violated any established safety protocol or the NCAA Rulebook by holding their indoor pitching practices without an L-screen or a dark backdrop. Bukowski's reliance on *Zmitrowitz v Roman Catholic Diocese of Syracuse* (274 AD2d 613, 614 [2000]) and *Baker v Briarcliff School Dist.* (205 AD2d 652, 653 [1994]) is misplaced because both cases involved coaches who allegedly failed to enforce established safety standards. The only mention in the NCAA Rulebook of an L-screen was that one must be available to a visiting team for batting practice.

As this Court stated in *Trupia v Lake George Cent. School Dist.*, sporting activities possess "enormous social value" but

also "significantly heightened risks" (14 NY3d 392, 395 [2010]). The doctrine of assumption of risk "facilitat[es] free and vigorous participation in athletic activities" (*Trupia*, 14 NY3d at 395, quoting *Benitez v New York City Bd. of Educ.*, 73 NY2d 650, 657 [1989]) and shields college athletics from potentially crushing liability. Clarkson University, a college located in upstate New York, should be able to allow its sports teams to practice indoors during the cold winter months without fear of liability for inability to replicate the ideal conditions of the outdoor spring season. Plaintiff's injuries are simply the result of a "luckless accident arising from . . . vigorous voluntary participation in competitive . . . athletics" (*Benitez*, 73 NY2d at 659).

Considering the facts in the light most favorable to the plaintiff, there was insufficient evidence from which a jury could have concluded that plaintiff faced an unassumed, concealed, or enhanced risk, even though it was his first time pitching live in the cage.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs.